# United States Court of Appeals
## For the First Circuit

No. 19-9011

IN RE PAUL FRANCIS,

Debtor.

PAUL FRANCIS,

Appellant,

v.

JOHN O. DESMOND, UNITED STATES TRUSTEE,

Appellee.

APPEAL FROM THE BANKRUPTCY APPELLATE PANEL
FOR THE FIRST CIRCUIT

Before

Thompson, Selya, and Kayatta,
<u>Circuit Judges</u>.

<u>Carmenelisa Perez-Kudzma</u> and <u>Perez-Kudzma Law Office, P.C.</u> on brief for appellant.
<u>Anthony R. Leone</u>, <u>Thomas S. Vangel</u>, and <u>Murtha Cullina LLP</u> on brief for appellee.

April 27, 2021

**SELYA**, <u>Circuit Judge</u>.  Discharges in bankruptcy are meant to give deserving debtors a fresh start.  In that spirit, the statutes and rules that govern the granting of such discharges are tailored to make discharges readily available.  But the road to a bankruptcy discharge is a two-way street, and a debtor must comply (or at least make good-faith efforts to comply) with lawful orders of the bankruptcy court.

In the case at hand, the bankruptcy court found that the debtor, Paul Francis, defaulted on this obligation.  It therefore refused to grant him a discharge and dismissed his bankruptcy petition.  The Bankruptcy Appellate Panel for the First Circuit (the BAP) affirmed, and so do we.

**I**

We begin by rehearsing the relevant facts and the travel of the case.  The debtor, together with his wife, owns a total of five real-estate properties, several of which are held for rent.  These properties are burdened by more than $2,000,000 in liabilities, consisting primarily of mortgage loans and accrued taxes.  Hoping to reorganize his affairs, the debtor — on April 3, 2017 — filed a petition for Chapter 13 bankruptcy in the District of Massachusetts.  <u>See</u> 11 U.S.C. § 301.  This initiative soon stalled: the following month, the Chapter 13 proceeding was dismissed by the bankruptcy court for failure to file required documents.

Undeterred, the debtor filed another Chapter 13 bankruptcy petition on July 21, 2017. In short order, the bankruptcy court notified the debtor that his Chapter 13 case was subject to dismissal because his liabilities exceeded the then-current secured debt limit ($1,184,200). See id. § 109(e) (2016). The debtor responded by moving to convert his case to a Chapter 11 reorganization proceeding. See id. § 1307(d). The bankruptcy court granted the requested conversion on September 26, 2017.

On October 5, the debtor consented to a court order obligating him to file a disclosure statement and a Chapter 11 plan by January 26, 2018. He never complied with this order and, on January 30, the United States Trustee moved to convert the debtor's Chapter 11 case to a straight bankruptcy under Chapter 7 "for cause."[1] See id. § 1112(b)(4). The motion charged the debtor with failing to comply with the court order, failing to furnish information reasonably requested by the Trustee, failing to file a timely disclosure statement and plan, and failing to pay reasonable fees. See id. § 1112(b)(4)(E), (H), (J), (K). The Trustee also sought to convert the case for delay and, in a separate motion, for failure to provide current insurance information. See id. § 1112(b)(4)(C).

---

[1] For ease in exposition, we deem all filings made on behalf of the United States Trustee, including those made through a subordinate or through counsel, as filings made by the United States Trustee.

- 3 -

At a hearing held on March 20, 2018, the bankruptcy court granted the Trustee's motion to convert the debtor's case to a Chapter 7 case.[2] The court also entered an order to update, directing the debtor to file, by April 3, either a list of post-petition creditors or a verification that he had none. Finally, the court ordered the debtor to file a statement of intention, see Fed. R. Bankr. P. 1007(b)(2), no later than thirty days after the conversion date. The court specifically admonished the debtor that "the case MUST be automatically dismissed under 11 U.S.C. § 521(i) if certain documents are not [timely] filed" (emphasis in original).

On March 28, the court notified the debtor of a scheduled meeting of creditors, to be held on April 26, which he was required to attend. See 11 U.S.C. § 341. The debtor neglected to appear for this meeting. Nor did he file any of the documents mandated by court orders.

On July 5, the court entered a further order requiring the debtor to file the overdue documents no later than July 19. This further order specifically warned that "refusal to obey a lawful order of the court is grounds for denial of discharge." A copy of this further order — like copies of the other orders

---

[2] The debtor unsuccessfully appealed this order to the BAP. See Francis v. Harrington (In re Francis), BAP No. MB 18-012, 2019 WL 1265316, at *1 (B.A.P. 1st Cir. Mar. 14, 2019) (per curiam).

subsequently described — was sent to the debtor by first-class mail at his usual place of residence in Milton, Massachusetts.

The court's further order went unheeded and, on August 13, the court ordered the debtor to show cause, "with supporting affidavit(s), why he should not be denied a discharge for refusal to obey a lawful order of the court." The debtor's counsel responded on August 27, noting that she had not received either the statement of intention or the schedule of post-petition creditors from the debtor, but nonetheless expressing her belief that she would be able to file the required documents on or about August 30.

When nothing was filed by August 30, the bankruptcy court ordered the debtor to appear for a show-cause hearing. That hearing was later rescheduled for September 25 at the debtor's request. Notice of both hearing dates was duly transmitted to the debtor and the debtor's counsel.

On September 21, the debtor made a filing indicating that he had no post-petition creditors. Two days later, he filed the long-overdue statement of intention. He then appeared, with counsel, for the show-cause hearing on September 25 and confirmed that he had received the various orders and notices that had been mailed to him. Questioned about his disregard of those orders, he explained that he had delegated responsibility to his wife to collect the mail and handle financial matters. He then added that

she had been away for a time and — after she returned — had suffered a second-degree burn that "set back things." He told the court that he had not opened the mail in his wife's absence; that he had not intentionally disobeyed any court order; and that he intended to comply with court orders in the future.

The bankruptcy court was not moved by the debtor's excuses, stating that:

> My problem is that it's like pulling teeth with Mr. Francis and this has been going on since March 2017, not this March. . . . This is the poster child for someone who has ignored what the court has required from him. . . . A big part of the problem in this case that caused its conversion was that we ordered him to file a plan and disclosure statement and that was ignored. Ignored. It was never filed. It was just a way to hold up the system. That would be my conclusion with respect to the way he's chosen to handle this bankruptcy case.

Consistent with this statement, the bankruptcy court, ruling from the bench, denied the debtor a discharge and dismissed his petition. See id. § 727(a)(6)(A). The court found that he had "repeatedly ignored lawful orders of the Court" and had exhibited a "conscious practice of ignoring mail, addressed to [him] and marked with the seal of this Court."

The debtor appealed to the BAP, which affirmed the bankruptcy court's rulings. See In re Francis, 604 B.R. 101, 108 (B.A.P. 1st Cir. 2019). This timely second-tier appeal ensued.

## II

Although we are the second appellate tribunal to pass upon the bankruptcy court's decision, we nonetheless review that decision directly. See Charbono v. Sumski (In re Charbono), 790 F.3d 80, 84-85 (1st Cir. 2015); Shamus Holdings, LLC v. LBM Fin., LLC (In re Shamus Holdings, LLC), 642 F.3d 263, 265 (1st Cir. 2011). We cede no special deference to the BAP's judgment. See Stornawaye Fin. Corp. v. Hill (In re Hill), 562 F.3d 29, 32 (1st Cir. 2009). Our review of the bankruptcy court's findings of fact is for clear error, whereas our review of its legal conclusions is de novo. See id.; Brandt v. Repco Printers & Lithographics, Inc. (In re Healthco Int'l, Inc.), 132 F.3d 104, 107 (1st Cir. 1997). Judgment calls are, of course, reviewed for abuse of discretion.[3] See United Sur. & Indem. Co. v. López-Muñoz (In re López-Muñoz), 866 F.3d 487, 496-97 (1st Cir. 2017).

Before us, the debtor advances four assignments of error. First, he argues that 11 U.S.C. § 521(i)(1), the so-called "automatic dismissal" provision of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), demands mechanical

---

[3] To be sure, it might be feasible to characterize the bankruptcy court's denial of a discharge in this case as a sanction for failing to comply with lawful orders of the bankruptcy court. See, e.g., Charbono, 790 F.3d at 83, 87; Bank of N.Y. v. Sunshine-Jr. Stores, Inc. (In re Sunshine-Jr. Stores, Inc.), 456 F.3d 1291, 1304-05 (11th Cir. 2006). But we do not read the bankruptcy court's decision in this manner — and even if we did, the outcome of this appeal would be unchanged.

application and, thus, his case should have been dismissed without prejudice when he failed to file the required documents on time. Second, he argues that the bankruptcy court lacked authority to order a denial of discharge sua sponte. Third, he argues that the record does not support a finding that he willfully failed to obey the bankruptcy court's orders. Fourth, he argues that the bankruptcy court's denial of a discharge contravened his due process rights. We examine these arguments sequentially.

A

Section 521(i)(1) provides (with exceptions not relevant here) that:

> [I]f an individual debtor in a voluntary case under chapter 7 or 13 fails to file all of the information required under subsection (a)(1) within 45 days after the date of the filing of the petition, the case shall be automatically dismissed effective on the 46th day after the date of the filing of the petition.

11 U.S.C. § 521(i)(1). Some bankruptcy courts have interpreted this provision as demanding mechanical application. See Segarra-Miranda v. Acosta-Rivera (In re Acosta-Rivera), 557 F.3d 8, 12 (1st Cir. 2009) (collecting cases). Other courts, though, have held that bankruptcy courts may excuse the belated filing of documents, even after the deadline prescribed by section 521(i)(1) has expired. See id. (collecting cases).

Although the authorities are divided, this question need not detain us. We already have staked out a position in this

debate, holding that "[c]ommon sense," the legislative history of the Bankruptcy Code, and the language of 11 U.S.C. § 521 combine to counsel in favor of finding that a mechanical application of the automatic dismissal provision is contrary to congressional intent. Id. at 12-14. Such an interpretation was virtually compelled: after all, "[b]ecause any party in interest may request an order of automatic dismissal, debtors with something to hide are liable to treat dismissal as an escape hatch to be opened as needed." Id. at 13. When such filings are not timely made, BAPCPA authorizes bankruptcy courts to "order[] otherwise," id. at 12 (quoting 11 U.S.C. § 521(a)(1)(B)), and thus empowers a bankruptcy court to excuse missing documents where "there is no continuing need for the information or a waiver is needed to prevent automatic dismissal from furthering a debtor's abusive conduct," id. at 14.

The debtor reproves our decision in Acosta-Rivera, declaring that he "does not agree with" this precedent. In his view, "[a] reading of the statute shows that Congress has given the bankruptcy courts almost no authority or discretion to avoid the automatic dismissal of cases." This argument lacks force.

To begin, Acosta-Rivera is emblematic of the majority rule. See, e.g., Wirum v. Warren (In re Warren), 568 F.3d 1113, 1117 (9th Cir. 2009); Simon v. Amir (In re Amir), 436 B.R. 1, 25 (B.A.P. 6th Cir. 2010); In re Bliek, 456 B.R. 241, 244-45 (Bankr. D.S.C. 2011); In re Richardson, 406 B.R. 586, 587 n.1 (Bankr.

W.D.N.Y. 2009); In re Parker, 351 B.R. 790, 801-02 (Bankr. N.D. Ga. 2006); In re Jackson, 348 B.R. 487, 499-500 (Bankr. S.D. Iowa 2006). Even more importantly, Acosta-Rivera is the law of this circuit. It is apodictic that, under the law of the circuit doctrine, "newly constituted panels in a multi-panel circuit court are bound by prior panel decisions that are closely on point." San Juan Cable LLC v. P.R. Tel. Co., 612 F.3d 25, 33 (1st Cir. 2010) (citing United States v. Rodríguez-Vélez, 597 F.3d 32, 46 (1st Cir. 2010); United States v. Wogan, 938 F.2d 1446, 1449 (1st Cir. 1991)).

Of course, the law of the circuit doctrine admits of narrow exceptions. See id. at 33. This case, however, does not fit within any of those exceptions but, rather, falls comfortably within the heartland of the doctrine.

The debtor has a fallback position. He tries to distinguish this case from Acosta-Rivera because "the Bankruptcy Court did not make a determination waiving the Order to Update requirement stating it was no longer necessary." In hawking this putative distinction, the debtor pins his hopes on language in Acosta-Rivera, see 557 F.3d at 13, which he says suggests that we fashioned only a limited exception to the automatic dismissal provision — an exception that has no pertinence here.

The debtor's crabbed reading of Acosta-Rivera does not withstand scrutiny. There, we did say that:

> When a party moves under section 521(i)(2) for the entry of an order dismissing an incomplete petition, the court can do one of three things: dismiss the case, decline to dismiss the case if the good-faith exception for payment advices applies, or determine, in its discretion, that the missing information is <u>not</u> "required under subsection (a)(1)."

557 F.3d at 13 (emphasis in original) (internal citation omitted) (quoting 11 U.S.C. § 521(i)(1)).  But these are not the only options limned in <u>Acosta-Rivera</u>.  We took pains to add that a bankruptcy court also may waive the filing of required documents to "prevent automatic dismissal from furthering a debtor's abusive conduct."  <u>Id.</u> at 14.  And although we cautioned that this discretion might not be "unfettered," we made pellucid that we would not "attempt to sketch the full range of circumstances that might justify the exercise of this discretion." <u>Id.</u> at 14 & n.9.  The circumstances here are consistent with the bankruptcy court's exercise of its discretion to deny a discharge instead of dismissing the debtor's petition without prejudice.

The debtor also attempts to distinguish <u>Acosta-Rivera</u> in other respects.  He submits that <u>Acosta-Rivera</u> "centered on whether the bankruptcy court may enter an order excusing non-disclosure <u>after</u> the time for filing the required information has expired" (emphasis in original).  He adds that the <u>Acosta-Rivera</u> "court sided with the debtor and did not allow dismissal upon motion by a creditor seeking dismissal for failure to comply with 521(i)."

- 11 -

But these purported distinctions are not distinctions at all.  On the first point, there is no meaningful difference between Acosta-Rivera and this case; and on the second point, the debtor simply misreads Acosta-Rivera.

That ends this aspect of the matter.  We hold, without serious question, that section 521(i) did not require the district court simply to dismiss the debtor's petition.

**B**

The debtor asserts that a bankruptcy court lacks the authority to deny a discharge except upon a motion from a party in interest.  Based on this assertion, he argues that the bankruptcy court erred in denying the debtor's discharge sua sponte.

The debtor raised this argument for the first time in his first-tier appeal to the BAP.  When an argument is not raised in the bankruptcy court but, rather, makes its debut on appeal, review is at best for plain error.[4]  See Redondo Constr. Corp. v. P.R. Highway & Transp. Auth. (In re Redondo Constr. Corp.), 678 F.3d 115, 121 (1st Cir. 2012).  To demonstrate plain error, the debtor must show:  "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the [debtor's]

---

[4] We say "at best" because, in some circumstances, such an argument may be deemed waived.  See Privitera v. Curran (In re Curran), 855 F.3d 19, 27 n.4 (1st Cir. 2017).  In this instance, the record reveals no basis for a finding of waiver.

substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).  Here, the debtor fails to demonstrate any error, much less plain error.

11 U.S.C. § 727(c)(1) provides in pertinent part that "[t]he trustee, a creditor, or the United States trustee may object to the granting of a discharge."  The debtor argues that the enumeration in section 727(c)(1) is all-inclusive and, thus, only the enumerated parties have standing to object to a discharge in bankruptcy.  Without such an objection, the debtor's thesis runs, the bankruptcy court lacks any independent authority to deny a discharge.

The debtor's argument attempts to place handcuffs on the bankruptcy court that Congress never envisioned.  Critically, the argument overlooks 11 U.S.C. § 105(a), the second sentence of which makes clear that Congress did not intend any "provision of this title providing for the raising of an issue by a party in interest . . . to preclude the court from, sua sponte, taking any action . . . to prevent an abuse of process."  This unambiguous language makes it nose-on-the-face plain that the bankruptcy court, acting sua sponte, possesses the authority to deny a debtor a discharge in consequence of, say, his flagrant disregard of the bankruptcy court's lawful orders.  Cf. Tasker v. DHL Ret. Sav. Plan, 621 F.3d 34, 41 (1st Cir. 2010) ("We cannot say that, by applying this

clear, direct language, according to its tenor, the district court committed an obvious error.").

If more were needed — and we doubt that it is — the legislative history of section 105(a) supports the bankruptcy court's exercise of its sua sponte authority. Congress added the second sentence of section 105(a) in 1986, "expressly intend[ing] to broaden the authority of bankruptcy courts to act, sua sponte, to promote the [Bankruptcy] Code's provisions." Kestell v. Kestell (In re Kestell), 99 F.3d 146, 148 (4th Cir. 1996) (citing 132 Cong. Rec. S15074-05 (daily ed. Oct. 3, 1986)). Since then, bankruptcy courts have read the statute to authorize the denial of a debtor's discharge sua sponte. See In re Asay, 364 B.R. 423, 425-27 (Bankr. D.N.M. 2007); In re Burrell, 148 B.R. 820, 823 (Bankr. E.D. Va. 1992). We, too, read section 105(a) in that way, and we therefore reject the debtor's assignment of error.[5]  Plain error is plainly absent.

## C

11 U.S.C. § 727(a)(6)(A) provides that:

(a) The court shall grant the debtor a discharge, unless — . . . (6) the debtor has refused, in the case — (A) to obey any lawful

---

[5] For the sake of completeness, we add that the bankruptcy court's denial of a discharge likely could be sourced from its "inherent power to impose punitive non-contempt sanctions for failures to comply with [its] orders." Charbono, 790 F.3d at 87. In view of our holding as to the scope of section 105(a), however, we need not probe this point.

>       order of the court, other than an order to
>       respond to a material question or to testify.

The bankruptcy court found that it had authority to act under this provision because the debtor had "refused" to obey a number of its lawful orders (including the order to update, the July 5 order, and the show-cause order). The debtor assails this finding, arguing that his "mere failure" to comply with the bankruptcy court's orders within the prescribed time frames did not constitute a refusal within the purview of section 727(a)(6)(A). In support, he contends that his failure to file was not willful.

The majority of courts to have considered the question have required a showing of willful or intentional disobedience in order to find a refusal under section 727(a)(6)(A). See Moore v. Robbins, 24 F. Supp. 3d 88, 95 (D.D.C. 2014) (collecting cases). This court, however, has not yet had occasion to pass upon this question. Nor do we need to do so today: even if we assume, favorably to the debtor, that a showing of willfulness is required, evidence of willfulness is abundant here. The debtor stonewalled no fewer than three lawful orders of the bankruptcy court without any legitimate justification — and he did so despite receiving pointed warnings from the court that his discharge hung in the balance.

The debtor relies heavily on the decision in Riley v. Tougas (In re Tougas), 354 B.R. 572, 578 (Bankr. D. Mass. 2006),

to challenge the bankruptcy court's finding that his conduct was willful.  In that case, the bankruptcy court concluded that "the Debtor's failure to produce the missing bank records and tax return" was not willful but "was the result of inattention and dilatoriness."  Id.  But determinations as to whether particular conduct sinks to the level of willfulness are notoriously case-specific, and the Tougas court's reasoning is inapposite here. Tougas gave decisive weight to "the mitigating circumstances outlined by the Debtor and her counsel, including her illness, frequent household moves, and the absence of clear instructions from her counsel to produce the missing records by a date certain." Id.  No equivalent mitigating circumstances are evident in this case.

With respect to willfulness, the key question is whether the debtor received the bankruptcy court's orders and failed, without any good reason, to comply with their terms.  See Standiferd v. U.S. Tr., 641 F.3d 1209, 1212 (10th Cir. 2011); Smith v. Jordan (In re Jordan), 521 F.3d 430, 433-34 (4th Cir. 2008); see also Katz v. Araujo (In re Araujo), 292 B.R. 19, 24 (Bankr. D. Conn. 2003).  A showing that the debtor received the orders "imposes upon the debtor an obligation to explain his non-compliance."  Jordan, 521 F.3d at 433; accord Standiferd, 641 F.3d at 1212.  A debtor's attempt to delegate responsibility to a spouse, without more, is not a legally cognizable excuse for non-

compliance with a court order[6] and may constitute willful disobedience, absent other justification. See Lassman v. Spalt (In re Spalt), 593 B.R. 69, 91-92 (Bankr. D. Mass. 2018). No such justification is apparent here.

To say more would be to paint the lily. In this case, the debtor's repeated spurning of bankruptcy court orders without any legitimate reason amply supports the bankruptcy court's finding of a willful refusal. The debtor's assignment of error is, therefore, unavailing.

**D**

The debtor's last assignment of error raises the specter of a due process violation. To a large extent, this is the same old whine in a new bottle: in mounting this argument, he intertwines it with the three arguments that we already have rejected. He says, for example, that the order to update warned only of dismissal should he not file the required documents, and he implies that the other orders did not adequately warn about the possibility of denying a discharge should he withhold compliance. The debtor adds that, by denying his discharge sua sponte, the court did not provide the opportunity for an adversarial hearing because — for reasons not clearly explained — "the hearing to show

---

[6] This is especially so in the case at hand, where the debtor attempted to delegate responsibility to his wife despite knowing that she was unable to accomplish the task, first because she was out of the country and later due to her injury.

cause cannot constitute the equivalent of a hearing to determine justification for the denial of the discharge."

We agree with the debtor's foundational premise: in bankruptcy proceedings, debtors are entitled to due process protections, including notice and an opportunity to be heard. See Charbono, 790 F.3d at 88. Notice must be "reasonably calculated, under all the circumstances" to satisfy due process requirements, but actual receipt of notice is not required. Whiting v. United States, 231 F.3d 70, 76 (1st Cir. 2000) (quoting Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950)). Service ordinarily can be by mail to a debtor's usual place of residence. See Fed. R. Bankr. P. 7004(b)(1).

In this case, the debtor received constitutionally sufficient notice. At least two of the bankruptcy court's orders (the July 5 order and the show-cause order) explicitly informed him that his discharge might be denied if he failed to file the specified documents. Copies of these orders, like a copy of the order to update, were addressed to the debtor and seasonably delivered by first-class mail to his home. To cinch the matter, the debtor testified that he received all three orders. No more was exigible to satisfy the notice component of the due process requirement. See Creditors Comm. of Park Nursing Ctr., Inc. v. Samuels (In re Park Nursing Ctr., Inc.), 766 F.2d 261, 262-64 (6th Cir. 1985).

So, too, the debtor had a constitutionally sufficient opportunity to be heard. The transcript of the show-cause hearing leaves no doubt that it qualifies as an adversarial proceeding. The debtor was represented by counsel and questioned at length about whether he received the orders and what he did with them. He and his lawyer each had ample opportunity to explain the debtor's admitted failure to comply with the court's orders. And after the bankruptcy court declared its intention to deny the debtor's discharge, the court provided a further opportunity to respond.[7] On this record, the debtor's due process claim rings hollow.

### III

We need go no further. A bankruptcy judge is not a supplicant, whose lawful orders have no more force than mere importunings. Where, as here, a debtor disregards such orders without adequate justification, he must be prepared to suffer the consequences of his recalcitrance. The consequence resulting here — the denial of a discharge — was well within the universe of permissible responses to the debtor's feckless course of conduct. For the reasons elucidated above, the BAP's judgment is

**Affirmed**.

---

[7] The debtor did not attempt to call any other witnesses, nor does he point to any disputed facts that the examination of witnesses would be likely to resolve. See Marlboro Corp. v. Ass'n of Indep. Colls. & Schs., Inc., 556 F.2d 78, 82 (1st Cir. 1977).